UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

RAFAEL J. CRESPO,
    Petitioner,

v.

WARDEN, STATE PRISON,
    Respondent.

No. 3:15-cv-00640 (SRU)

## RULING ON PETITION FOR WRIT OF HABEAS CORPUS

Rafael J. Crespo—an inmate currently confined at Brooklyn Correctional Institution in Brooklyn, Connecticut—brings this action pro se for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Crespo challenges his 2006 Connecticut convictions for sexual assault in the first degree and sexual assault in the third degree. For the reasons that follow, I deny the petition.

**I.    Standard of Review**

A federal court will entertain a collateral attack upon a state court conviction only if the petitioner claims that his custody violates a federal statute or the United States Constitution. *See* 28 U.S.C. § 2254(a). A claim that a state conviction was obtained in violation of *state* law, by contrast, is not cognizable in federal court. *See Estelle v. McGuire*, 502 U.S. 62, 68 (1991).

Section 2254(d) "imposes a highly deferential standard for evaluating state-court rulings" and "demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010). A federal court cannot grant a state prisoner's petition for a writ of habeas corpus with regard to any claim that was rejected on the merits by the state court, unless the adjudication of the claim in state court either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). That standard is "intentionally difficult to meet." *Woods v. Donald*, __ U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation marks omitted).

Clearly established federal law is found in "holdings," not "dicta," of the United States Supreme Court at the time that the state court decision was issued. *Howes v. Fields*, 565 U.S. 499, 505 (2012). "[C]ircuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court,'" and "therefore cannot form the basis for habeas relief." *Parker v. Matthews*, 567 U.S. 37, 48–49 (2012) (quoting 28 U.S.C. § 2254(d)(1)). The law in question may be either a "generalized standard" or a "bright-line rule designed to effectuate such a standard in a particular context." *Kennaugh v. Miller*, 289 F.3d 36, 42 (2d Cir. 2002).

A decision is "contrary to . . . clearly established Federal law" when the state court "applies a rule different from the governing law set forth" by the Supreme Court or when it "decides a case differently than [the Supreme Court] ha[s] done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 693–94 (2002). A decision "involve[s] an unreasonable application of . . . clearly established Federal law" when the state court "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case,' or refuses to extend a legal principle that the Supreme Court has clearly established to a new situation in which it should govern." *Hoi Man Yung v. Walker*, 468 F.3d 169, 176 (2d Cir. 2006) (quoting *Williams v. Taylor*, 529 U.S. 362, 407–08 (2000)). It is not enough that "a federal court believes the state court's determination was incorrect." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). Rather, the state court's application of clearly established law must be "objectively unreasonable, not merely wrong; even clear error will not suffice."

*Woods*, 135 S. Ct. at 1376. A state prisoner must show that the challenged ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011); *see also Burt v. Titlow*, 571 U.S. 12, 16 (2013) (federal habeas relief warranted only where the state criminal justice system has experienced an "extreme malfunction") (internal brackets omitted).

When reviewing a habeas petition, the federal court presumes that the factual determinations of the state court are correct. The petitioner bears the burden to rebut that presumption by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (standard for evaluating state-court rulings under section 2254 is "highly deferential," and the "petitioner carries the burden of proof"). In addition, the federal court's "review under section 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen*, 563 U.S. at 181.

## II. Procedural History

In early February 2005, police officers executed a warrant for Crespo's arrest on charges of kidnapping, assault, sexual assault, threatening and unlawful restraint. *See* Appellate Court Record (Initial Appeal), App'x B to Mem. Opp'n Pet. Writ Habeas Corpus, Doc. No. 15-2 ("App. Ct. R. (Init. App.)"). On February 4, 2005 the Connecticut Superior Court for the Judicial District of New Haven arraigned Crespo on two counts of kidnapping, two counts of sexual assault, three counts of assault, one count of stalking and four counts of unlawful restraint. *See id.* at 11, 13–16. On April 19, 2006, the state filed an information charging Crespo with four counts of sexual assault in the first degree in violation of Conn. Gen. Stat. § 53a-70(a)(1), two counts of assault in the third degree in violation of Conn. Gen. Stat. § 53a-61(a)(1), and one

3

count of kidnapping in the second degree in violation of Conn. Gen. Stat. § 53a-94. *See* App. Ct. R. (Init. App.), Doc. No. 15-2, at 25–26.

On May 22, 2006, a jury found Crespo guilty of two counts of sexual assault in the first degree and two counts of assault in the third degree, and not guilty of two counts of sexual assault in the first degree and one count of kidnapping in the second degree. *See id.* at 20, 59–60. On August 9, 2006, the Superior Court dismissed one of counts of third degree sexual assault and sentenced Crespo on the three remaining counts. *See id.* at 21–24. The court imposed a total effective sentence of twenty years of imprisonment, execution suspended after fourteen years and followed by fifteen years of probation with conditions. *See id.* at 21–24, 59–60.

Crespo appealed his convictions on three grounds. *See State v. Crespo*, 114 Conn. App. 346, 348 (2009). He claimed that the trial judge erred by (1) precluding him from introducing evidence of the victim's sexual history; (2) improperly permitting the state to present evidence regarding the behavior of sexual assault victims generally; and (3) failing to disclose important information to him from the victim's medical records after reviewing the records in camera. *See id.* On May 12, 2009, the Appellate Court affirmed the judgment of conviction. *See id.* at 378. Crespo then filed a petition for certification to appeal, which the Connecticut Supreme Court granted on June 30, 2009 with regard to whether the trial court improperly denied Crespo's request to introduce impeachment evidence pertaining to the victim's prior sexual conduct. *See State v. Crespo*, 292 Conn. 917 (2009). On January 31, 2012, the Connecticut Supreme Court affirmed the Appellate Court's decision, and concluded that the exclusion of the evidence at issue did not violate Crespo's Sixth Amendment rights to confrontation and to present a defense. *See State v. Crespo*, 303 Conn. 589, 592 (2012).

In October 2007, Crespo filed a petition for writ of habeas corpus challenging his convictions in the Connecticut Superior Court for the Judicial District of Tolland at Rockville. *See* Appellate Court Record (Habeas Petition), App'x O to Mem. Opp'n Pet. Writ Habeas Corpus, Doc. No. 15-16 ("App. Ct. R. (Habeas Pet.)"). In Crespo's third amended petition, which was filed on October 2, 2012, Crespo claimed that trial counsel had been ineffective in multiple ways and that the prosecutor had engaged in misconduct by improperly using the words "rape" and "victim" throughout the trial. *See id.* at 7–12.

The Superior Court held hearings on the claims in the amended petition on October 12 and October 26, 2012. *See* Habeas Hr'g Trs., App'x V to Mem. Opp'n Pet. Writ Habeas Corpus, Docs. Nos. 15-35, 15-36. At the hearings, Crespo presented evidence concerning four ways in which he alleged that counsel had been ineffective, by (a) failing to argue the correct exception to the Rape Shield; (b) neglecting to assert a statute of limitations defense before trial; (c) failing to object to the prosecutor's use of the words "rape" and "victim" during the trial; and (d) neglecting to call Marie Calma, Cesar Rivera, and Jeffrey Cruz as witnesses at trial. *See id.*; *see also Crespo v. Warden*, 2012 WL 6743571, at *5 (Conn. Super. Ct. Nov. 28, 2012).

On November 28, 2012, the Superior Court granted Crespo's petition with respect to his claim that counsel was ineffective in failing to call Cruz to testify at trial. *See Crespo*, 2012 WL 6743571, at *10–*12. The Superior Court dismissed Crespo's claim of prosecutorial misconduct and denied the petition with respect to all of the other bases on which Crespo claimed that trial counsel had been ineffective. Because the court granted Crespo's petition with respect to counsel's failure to call Cruz to testify, the court vacated Crespo's convictions and remanded the case for further prosecution. *See id.* at *12.

5

The State appealed that decision. It argued that, even though trial counsel's failure to call Cruz as a witness was deficient, the Superior Court erred in finding that the evidence supported a finding of prejudice under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *See* Appellant's Br. (Habeas Pet.), App'x P to Mem. Opp'n Pet. Writ Habeas Corpus, Doc. No. 15-17. On March 25, 2014, the Appellate Court reversed the decision of the Superior Court, remanded the case, and directed the court to enter judgment denying the amended petition for writ of habeas corpus. *See Crespo v. Comm'r of Corr.*, 149 Conn. App. 9, 25 (2014). On May 7, 2014, the Connecticut Supreme Court denied Crespo's petition for certification to appeal the decision of the Appellate Court. *See Crespo v. Comm'r of Corr.*, 311 Conn. 953 (2014).

Crespo commenced the present habeas petition in April 2015. The State has filed a memorandum in opposition to the petition, and Crespo has filed a reply to that memorandum.

### III.   Factual Background

On Crespo's appeal of his conviction, the Connecticut Appellate Court determined that the jury reasonably could have found the following facts:

> [Crespo] met the victim during the summer of 2002, and the two began dating. At times relevant, [Crespo] was a police officer and the victim was a college graduate student. In the months prior to December, 2002, the two engaged in sexual activities together, but this conduct did not include vaginal or anal intercourse. In December, 2002, [Crespo] forcibly engaged in vaginal intercourse with the victim but, prior to this sexual encounter, she had been a virgin. On February 4, 2003, the victim sought medical attention at a college health clinic. Although the victim reported to a nurse that she had been raped, the victim declined to report the incident to the police. The victim believed that if she were to report the incident, [Crespo's] status as a police officer would protect him and that he would retaliate against her.
>
> Following this incident, the victim's physical and psychological well-being suffered. The victim took steps to distance herself from [Crespo]. For example, on several occasions she did not return [Crespo's] telephone calls or e-mails. [Crespo] persisted in his efforts to continue the

6

relationship by calling and e-mailing the victim. Also, he appeared uninvited at both her residence and place of employment. Nonetheless, the victim's relationship with [Crespo] continued, and she accepted favors and gifts from [Crespo] and, on occasion, accepted his invitations to dinner and the like. [Crespo's] relationship with the victim, however, was characterized by violent outbursts. During an incident in March, 2003, [Crespo] unexpectedly visited the victim at her residence. [Crespo] angrily accused the victim of making herself look good so that she could attract other men. [Crespo] called the victim a slut and physically assaulted her by punching her and pulling her hair. [Crespo] told the victim that he wanted to end their relationship, yet [Crespo] thereafter contacted the victim. [Crespo] repeatedly threatened the victim, both implicitly and explicitly, with physical violence. Although the victim feared [Crespo], she continued to spend time with him, often in public settings, and did not report any incidents of abuse to law enforcement personnel.

In June, 2003, the victim returned to Connecticut from a family engagement in another state. [Crespo] had instructed the victim to call him while she was away, but the victim had called him only once. When the victim arrived at the airport, [Crespo] was waiting there for her and, taking her by the hand, angrily led her away from the airport. [Crespo] drove the victim to her residence. Upon accompanying the victim inside, [Crespo] played the messages that had been left on the victim's telephone answering machine while she was away. Consequently, [Crespo] heard a message left for the victim from a man who had met the victim at a local nightclub. The caller indicated that he thought the victim was attractive and that he wanted to see her again.

Upon hearing this message, [Crespo] became irate. [Crespo] physically assaulted the victim by slapping the victim's face, pulling her hair, punching her, kicking her and knocking her to the floor. [Crespo] called the man who had left the message for the victim; he argued and yelled at him while the victim pleaded for [Crespo] to stop.

After [Crespo] ended the telephone conversation, he continued his physical assault of the victim. Despite her protests, [Crespo] hit, kicked and punched the victim about her body while yelling at her and calling her a whore. [Crespo] punched the victim in the face and knocked her to the floor. Thereafter, [Crespo] forcibly removed the victim's clothing and vaginally raped her. Following the sexual assault, [Crespo] left the residence. The victim reported this assault to her mother but not to the police. Shortly after this incident, [Crespo] sent the victim an e-mail in which he expressed his intent to stop interacting with the victim. Nevertheless, [Crespo] later resumed having contact with the victim.

On May 15, 2004, [Crespo] drove to the victim's place of employment, and the victim permitted [Crespo] to take her shopping and to a movie.

7

[Crespo] drove the victim to a shopping mall, where he purchased undergarments for her. Later, while the two were watching a movie, [Crespo] became upset with the victim and hastily left the movie theater. The victim left the theater with [Crespo] in his automobile. Following a dispute over the victim's sunglasses, [Crespo] became more and more agitated while driving the victim home. He began striking his steering wheel and was brandishing a gun. [Crespo] drove his automobile into a parking lot where he began to beat the victim. The victim exited the automobile, but [Crespo] pursued her and continued to strike her. [Crespo] kicked the victim, causing her to fall to the ground. Among her injuries, the victim sustained a significant elbow injury. When the victim was unable to rise from the pavement, [Crespo] drove away from the scene. Several minutes later, [Crespo] returned and forced the victim into the automobile by pulling her hair and pushing her into the passenger seat.

The victim told [Crespo] that she did not want others at her college residence to see her in the condition that she was in. At her suggestion, [Crespo] drove her to his parents' home, where the victim stayed for several days. Thereafter, [Crespo] and his father drove the victim back to her place of employment. In the following days, the victim sought treatment for her injuries from medical personnel at her college. At this time, the victim suffered emotionally, and her physical injuries ranged from the injury to her elbow to dehydration. The victim told a nurse and a physician that her boyfriend had beaten and sexually assaulted her. An administrator at the victim's college also became aware of the victim's condition as well as the victim's concern for her safety. As a result, the victim moved into a more secure dormitory at the college. Despite discussing her claims of abuse with these individuals associated with her college, the victim declined to report the incidents of abuse to the police.

In mid-June, 2004, on the victim's birthday, [Crespo] called the victim at her place of employment approximately fifty times. The victim agreed to go to dinner with [Crespo]. After dinner, the two returned to the victim's residence. [Crespo], who was cordial during the date until this time, became irritable. He removed his clothing, accused the victim of staining his shirt during dinner and demanded that she clean the shirt. Upon the victim's refusal, [Crespo's] anger escalated, and he became verbally abusive. Then, the victim and [Crespo] engaged in consensual vaginal intercourse. Afterward, [Crespo] forcibly engaged in anal intercourse with the victim against her will. [Crespo] later left the victim's apartment while she was showering.

[Crespo] and the victim remained in contact following this incident. By November, 2004, the victim had taken steps to end the relationship despite [Crespo's] efforts to continue the relationship. In December, 2004, the

> victim reported the incidents of abuse to a police officer. [Crespo's] arrest followed.
>
> At trial, [Crespo] acknowledged that he and the victim had been in a stormy romantic relationship but denied that he had threatened or assaulted her. [Crespo] testified that he and the victim had engaged in consensual sexual intercourse shortly after they began dating in June, 2002. With regard to the injury to the victim's elbow, for which she had received medical attention, [Crespo] testified that it occurred accidentally, not during a physical assault. [Crespo] testified that he had given the victim numerous types of assistance, including financial assistance, during their relationship but that she was possessive, jealous and, at times, irrational during her interactions with him. He testified that he voluntarily had ended his relationship with the victim in November, 2004.

*Crespo*, 114 Conn. App. at 348–53.

## IV. Discussion

In his present petition, Crespo asserts two grounds for relief. The first challenges the standard of review applied by the Connecticut Appellate Court in its decision vacating the ruling that granted Crespo's state habeas petition; the second asserts that the Appellate Court erred in rejecting Crespo's claim of ineffective assistance of trial counsel. *See* Pet. Writ Habeas Corpus, Doc. No. 1 at 10–11, 13, 26. I consider each ground in turn.

### A. Appellate Court Review

Crespo brings a twofold challenge to the Appellate Court's review of the state habeas decision. First, Crespo argues that the Appellate Court failed to apply a Connecticut evidentiary presumption that the trial court acted properly and considered all the evidence before it. Second, Crespo contends that the Appellate Court considered a claim of error that was not raised before the trial court and then decided the case in the absence of an adequate record for review. Crespo does not identify the alleged error that he claims the Appellate Court improperly considered on appeal, nor does he specify in what way the record was inadequate for review.

9

Crespo raised both arguments in the first ground of his petition for certification to appeal from the Appellate Court's decision in the state habeas proceedings. *See* App'x R to Mem. Opp'n Pet. Writ Habeas Corpus, Doc. No. 15-19. The Connecticut Supreme Court denied Crespo's petition for certification without comment. *See Crespo*, 311 Conn. 953.

Crespo characterizes the Appellate Court's alleged errors as violations of his right to due process under the Fourteenth Amendment to the United States Constitution. The State responds that the claims involve matters of state law that are not reviewable in a section 2254 petition.

Having reviewed Crespo's petition for certification to the Connecticut Supreme Court, I conclude that Crespo argued that the Appellate Court violated state evidentiary law governing the presumption accorded a trial court's consideration of evidence, as well as state law governing the requirement that an adequate record be presented on appeal. *See* Pet. Cert., App'x R to Mem. Opp'n Pet. Writ Habeas Corpus, Doc. No. 15-19, at 9–10 (citing *Equity One v. Shivers*, 310 Conn. 119, 131–32 (2013); *State v. Hill*, 307 Conn. 689, 699–700 (2013)). Although the "Questions Presented" section of the petition alleges "depriv[ation] . . . of [Crespo's] state and federal constitutional rights to due process of law," *id.* at 2, Crespo did not include any citations to federal cases in the petition, nor did he otherwise refer to or explain the supposed federal due process violation. Instead, Crespo's argument was based solely on violations of Connecticut case law: Crespo contended that the Appellate Court had unreasonably applied Connecticut law in reviewing the decision of the trial court in the habeas proceedings. *See id.* at 9–10.

The United States Supreme Court has emphasized that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle*, 502 U.S. at 67–68. Accordingly, federal courts are limited to reviewing claims that a state conviction was obtained in violation of some right guaranteed by the United States Constitution or other federal

10

law. *See* 28 U.S.C. § 2254(a) (federal courts "shall entertain an application for a writ of habeas corpus in behalf of a person in state custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States"); *Pulley v. Harris*, 465 U.S. 37, 41 (1984) ("A federal court may not issue the writ on the basis of a perceived error of state law.").

Aside from claiming that his due process rights were violated, Crespo has not explained how the Appellate Court contravened federal law by allegedly failing to apply a state law evidentiary presumption or a state law rule regarding the adequacy of a record on appellate review. The Supreme Court has consistently stated that "a 'mere error of state law' is not a denial of due process." *Swarthout v. Cooke*, 562 U.S. 216, 222 (2011) (per curiam) (quoting *Engle v. Isaac*, 456 U.S. 107, 121, n.21 (1982)). Indeed, were it otherwise, "every erroneous decision by a state court on state law would come [to federal court] as a federal constitutional question." *Gryger v. Burke*, 334 U.S. 728, 731 (1948). Thus, Crespo cannot transform an alleged error of state law into a federal constitutional violation simply by invoking the term "due process."

Because both of Crespo's claims in the first ground of his section 2254 petition are based solely on state law established by state cases, those claims do not state a violation of Crespo's federal constitutional rights. As such, I have no basis to review the claims. *See Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) ("[I]t is only noncompliance with *federal* law that renders a State's criminal judgment susceptible to attack in federal courts."); *Estelle*, 502 U.S. at 67 ("[F]ederal habeas corpus relief does not lie for errors of state law"). Therefore, I deny Crespo's petition for writ of habeas corpus with respect to the first ground for relief.

B. Ineffective Assistance of Trial Counsel

In his second ground for relief, Crespo argues that the Appellate Court erred in concluding that his trial counsel's deficient performance did not prejudice the outcome of his trial. The State argues that the Appellate Court reasonably applied federal law in reversing the decision of the Superior Court with regard to Crespo's claim of ineffective assistance of counsel.

1. *Standard*

An ineffective assistance of counsel claim is reviewed under the standard set forth in *Strickland v. Washington*, 466 U.S. 668. To prevail, Crespo must demonstrate, first, that counsel's conduct was "deficient" in that it "fell below an objective standard of reasonableness" established by "prevailing professional norms." *Id.* at 687–88. The "reasonableness" of counsel's conduct should be "judge[d] . . . on the facts of the particular case, viewed as of the time of counsel's conduct," and the court's review must be "highly deferential." *Id.* at 689. Bearing in mind that "advocacy is an art and not a science," the court should "recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 681, 690.

If Crespo demonstrates that counsel's performance was deficient, then he must also show that the deficiencies were "prejudicial to the defense." *Id.* at 692. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. To meet the prejudice element, Crespo must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A "reasonable probability" is one that is "sufficient to undermine confidence in the outcome" of the trial. *Id.*

"Failure to make the required showing of *either* deficient performance *or* sufficient prejudice defeats the ineffectiveness claim." *Id.* at 700 (emphasis added). Thus, should Crespo fail to meet one element of the standard, I need not consider the remaining one.

2. *Application*

In analyzing Crespo's ineffective assistance of counsel claims, the Appellate Court applied the standard established in *Strickland*. Because the state court applied the correct legal standard, Crespo cannot meet the "contrary to" element of section 2254(d)(1). Instead, he must show that the Appellate Court's decision was an "unreasonable application" of *Strickland*.

On appeal from the decision granting the state habeas petition, the State conceded that trial counsel's decision not to call Cruz was deficient. The State argued, however, that the decision did not prejudice the outcome of the trial. In considering the issue, the Connecticut Appellate Court related the following additional facts:

> Cruz, a lifelong friend of [Crespo], was referenced in the underlying criminal trial through the victim's testimony regarding an incident of uncharged misconduct. Specifically, during presentation of the state's case-in-chief, the victim testified that [Crespo] physically assaulted her at Cruz'[s] New Jersey residence in February, 2004. In her specific testimony concerning the incident of uncharged misconduct, the victim related the following sequence of events. The victim and [Crespo] had traveled to New Jersey to stay with Cruz on or about February 14, 2004, with the intention of staying for the weekend. One morning during their stay, an argument occurred between the victim and [Crespo] in a second floor bedroom. In the midst of their argument, [Crespo] punched the victim in the face causing her to fall to the floor near the bedroom door. He then slammed her hand with the door and left the residence. The victim, with visible bruises and cuts on her face, then went downstairs where she encountered Cruz. Cruz had heard the fighting and demanded to know what happened. Before the victim could explain, Cruz noticed the victim's physical injuries. He then asked her to leave or cover her injuries with cosmetics. After telling him that she had nowhere to go, Cruz and the victim talked "for a few hours." During their discussion, Cruz told the victim that "this is how [Crespo] treats women . . . you need to break off the relationship and get out of it . . . [Crespo] treats women like dogs."

13

> [Crespo], testifying in his own defense during the criminal trial, denied assaulting the victim in New Jersey. Cruz was never presented as a witness during trial.
>
> During the habeas trial, Cruz offered a different account of what occurred during Crespo's and victim's February, 2004 visit to his residence. Cruz testified that he observed [Crespo] exit his residence through the backdoor one morning. About five seconds later, he stopped the victim, who was "going after" [Crespo], because he wanted to avoid an argument occurring outside of his residence. He denied hearing any argument before the victim came downstairs and also denied observing any injuries, bruising, or cuts on the victim's body. In addition, he testified that he did not tell the victim that [Crespo] mistreated women, treated them like "dogs," and that his conversation with her could not have lasted more than "two or three minutes."

*Crespo*, 149 Conn. App. at 15–17.

In reviewing Crespo's claim of ineffective assistance, the Appellate Court noted that the victim's testimony regarding the February 2004 incident at Cruz's house was considered evidence of uncharged misconduct and was "admitted only insofar as it [was] relevant to the relationship between the [victim] and [Crespo]" and "not . . . to prove the bad character of the [Crespo] or [his] tendency to commit criminal acts." *See id.* at 20 & n.7. The Appellate Court also observed that, "in the absence of a fair indication to the contrary," a jury "is presumed . . . to have followed the court's instructions." *Id.* at 20 (citing *Strickland*, 466 U.S. at 695). Thus, for purposes of assessing prejudice, the Appellate Court presumed that the jury "reasonably, conscientiously, and impartially" considered the testimony only for the purpose for which it was admitted into evidence. *See id.* at 20–21 (quoting *Strickland*, 466 U.S. at 695).

The Appellate Court further determined that—based on the ample other evidence offered against Crespo at trial—even had the jury credited Cruz's testimony and disbelieved the victim's account of the February 2004 incident, it was unlikely that Cruz's testimony would have "raised a reasonable doubt in the minds of the [jurors] as to [Crespo]'s guilt." *Id.* at 21. For each count

14

on which the jury found Crespo guilty, the Appellate Court concluded that there was significant evidence "independent of the victim's testimony." *Id.* The Superior Court's decision, conversely, had been based on a "limited summary" of the evidence that did not consider testimony and documentary evidence presented by witnesses other than the victim. *See id.* at 22–23. Cruz's testimony "would not tend to refute the testimony" of all those other witnesses. *Id.* at 23.

"[I]n light of *all of the evidence* that was before the jury," the Appellate Court held that counsel's errors had only "an isolated, trivial effect." *Id.* at 24 (citing *Gaines v. Comm'r of Corr.*, 306 Conn. 664, 689 (2012), which in turn quoted *Strickland*, 466 U.S. at 696). Even though counsel's error "*conceivably* could have influenced the outcome," the Appellate Court concluded that the error did not suffice to "undermine[] the reliability of the result of the proceeding." *Id.* at 23 n.9 (quoting *Strickland*, 466 U.S. at 693) (emphasis in *Crespo*); *see also Harrington*, 562 U.S. at 112 ("The likelihood of a different result must be substantial, not just conceivable."). Accordingly, the Appellate Court held that the trial court incorrectly determined that Crespo had suffered prejudice under *Strickland* due to counsel's deficient performance.

I conclude that the Appellate Court properly considered and reviewed the totality of evidence presented at the trial in determining whether prejudice had been demonstrated as a result of counsel's failure to call Cruz as a witness. *See Strickland*, 466 U.S. at 695 ("[A] court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury."). The court determined that, based on the independent testimony and evidence that corroborated the victim's testimony—and because Cruz's testimony "related to an incident of uncharged misconduct that played a relatively minor role in [Crespo]'s criminal trial"—Crespo had not shown that "it was . . . reasonably probable that the outcome would have been different." *Crespo*, 149 Conn. App. at 24 (citing *Harrington*, 562 U.S. at 112). That was not an

15

unreasonable application of *Strickland*'s prejudice element. *See Harrington*, 562 U.S. at 101 ("The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable.") Therefore, I deny Crespo's petition for writ of habeas corpus with respect to the second ground for relief.

**V.     Conclusion**

The Petition for Writ of Habeas Corpus [**Doc. No. 1**] is **DENIED**. The Clerk shall enter judgment in favor of the respondent and close the case.

I conclude that reasonable jurists could not disagree about whether Crespo has shown that he was denied a constitutionally or federally protected right. Thus, any appeal from this order would not be taken in good faith, and I decline to issue a certificate of appealability. *See* 28 U.S.C. §§ 1915(a)(3), 2253(c)(2).

So ordered.

Dated at Bridgeport, Connecticut, this 30th day of April 2018.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge